## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FREDERICK Q. HACKNEY, JR.,** | ) | |
| **#0134698,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20-cv-00015-NJR** |
| | ) | |
| **JAROD PETERS,** | ) | |
| **C/O MIDDENDORF,** | ) | |
| **and C/O GEISEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Peters, Geisen, and Middendorf (Doc. 25).

### BACKGROUND

Plaintiff Frederick Hackney, Jr., filed the underlying action during his detention at Randolph County Jail ("Jail") in Chester, Illinois. (Doc. 26, ¶ 2; Doc. 31, ¶ 2). In the Complaint, Hackney alleges that he was attacked twice by two federal detainees in November 2019. (Doc. 26, ¶¶ 3-4; Doc. 31, ¶¶ 3-4). Inmates Jackson and Blake assaulted him on November 11, 2019. (Doc. 26, ¶ 3; Doc. 31, ¶¶ 3, 27). Inmate Jackson then assaulted him again ten days later, on November 21, 2019. (Doc. 26, ¶ 4; Doc. 31, ¶ 4).

When Hackney reported the first attack to Officer Geisen, the officer placed the entire cell block on lockdown. (*Id.*). The following morning, Jail Administrator Peters removed Inmates Jackson and Blake from the cell block. (*Id.*). Peters allegedly promised Hackney that they would never be housed near one another again. (*Id.*).

On November 21, 2019, Inmate Jackson was nevertheless transferred back to the cell block. (*Id*. at 6-9; Doc. 31, ¶ 4). Inmate Jackson repeatedly warned the officers that he had problems with his placement near Hackney. Even so, Officer Middendorf took no action to protect Hackney. As Middendorf stood watching, Inmate Jackson fractured Hackney's nose. (*Id*.).

Hackney brought claims for money damages against Randolph County Jail Administrator Jarod Peters, Officer Christopher Geisen, and Officer Aaron Middendorf. (Doc. 1, p. 9; Doc. 26, ¶ 1; Doc. 31, ¶ 1). Following preliminary review of this matter under 28 U.S.C. § 1915A, Hackney was allowed to proceed with a single Eighth Amendment claim against Defendants for failing to protect him from the second attack on November 21, 2019, but not the first attack on November 11, 2019. (Doc. 26, ¶ 5; Doc. 31, ¶ 5).

Defendants moved for summary judgment on the basis that Hackney failed to exhaust his available administrative remedies before bringing suit. (Doc. 26). Defendants point out that Hackney took no steps to initiate the grievance process that was available to him following the second assault on November 21, 2019. (*Id*. at ¶¶ 14-15). Thus, they seek summary judgment. (Docs. 25 and 26).

Hackney opposes the summary judgment motion on the ground that administrative remedies were unavailable to him. (Doc. 31). Specifically, he attempted to grieve the first assault. Peters's decision to transfer Inmates Blake and Jackson from the cellblock resolved the issue on November 12, 2019, and his decision to return Inmate Jackson to the cell block nine days later constituted revocation of that decision that relieved Hackney of any obligation to pursue administrative remedies following the second assault. Moreover, Hackney's fear of retribution for filing a grievance rendered the process unavailable to him. Accordingly, Hackney asks the Court to deny the summary judgment motion. (*Id*.).

The Court held an evidentiary hearing to decide disputed issues of material fact regarding the availability of Hackney's administrative remedies on March 25, 2021. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Based on the evidence and testimony presented, the Court now finds that Hackney failed to properly exhaust his available remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

### LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary judgment motion based on failure to exhaust administrative remedies typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Pavey*, 544 F.3d at 742. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are decided by the judge and not a jury. *Id*. at 740-41.

Lawsuits filed by inmates are governed by the PLRA, 42 U.S.C. § 1997e(a). The PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit, and the Supreme Court has interpreted the PLRA to require "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). To properly exhaust, an inmate must "file complaints and appeals in the place, and at the time, the

prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Strict compliance with the Jail's grievance process is required. *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). Failure to exhaust administrative remedies is an affirmative defense, and the burden of proof is on a defendant who raises it. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Exhaustion as a precondition to suit is limited to those remedies that are "available." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). A grievance procedure is considered unavailable if it is not "capable of use" to obtain "some relief for the action complained of." *Booth v. Churner*, 532 U.S. 731, 738 (2001). There are three situations in which a grievance process is typically deemed unavailable: (a) when it operates as a simple dead end because officers are either unable or unwilling to provide any relief to aggrieved inmates; (b) when prison administrators thwart inmates from taking advantage of the grievance process through misrepresentation, intimidation, or other machinations; and (c) when the administrative scheme is so opaque that it becomes essentially incapable of use. *Ross v. Blake*, -- U.S. --, 136 S.Ct. 1850, 1858-60 (2016).

## ANALYSIS

At the time of both assaults, the Jail had a grievance process in place. The Jail's Inmate Rules contain this procedure in Section 6.1:

> When an inmate feels he has reason to file a grievance the inmate should request a grievance form from the Correctional Officer. The inmate has 48 hours from the time of the alleged grievance. The Jail Administrator or his designee has 5 business days to respond to the grievance.
>
> The inmate then has 48 hours to appeal the grievance response.

(Doc. 26, ¶¶ 8-9; Doc. 31, ¶¶ 8-9). It is undisputed that Hackney had access to a copy of this procedure. Even so, he admittedly made no attempt to file a grievance following the second assault that occurred on November 21, 2019.

4

Hackney's only efforts to exhaust his administrative remedies occurred after the first assault on November 11, 2019, and before the second assault on November 21, 2019. He filed a complaint on November 11, 2019. Hackney used lined paper, because he claims that grievance forms were not provided to inmates upon request. He saw other inmates using lined paper to file grievances, so he did the same. Hackney did not address staff misconduct in his complaint, and he did not save a copy of it. Peters met with Hackney to discuss his concerns on November 12, 2019, and he agreed to remove Inmates Blake and Jackson from the cellblock the same day. Hackney believed the matter was resolved in his favor.

Hackney admittedly filed no complaint or grievance about the second assault that occurred when Inmate Jackson returned to his cell block on November 21, 2019. When Hackney went to the hospital for treatment of a broken nose, an officer asked him whether he wanted the case referred for prosecution against Inmate Jackson. Hackney stated that he did. But, when he heard nothing more about the referral, Hackney took no additional steps to inquire into the status of the matter. In any event, a referral for prosecution would not satisfy the PLRA's exhaustion requirement. Hackney was required to follow each of the steps in the Jail's grievance process. He did not. From the date of the second assault until the date of his transfer out of the Jail in January 2020, Hackney filed no complaint, grievance, or appeal to address the second assault.

Moreover, Hackney's efforts to exhaust his administrative remedies for the first assault did not relieve him of the obligation to exhaust his available remedies for the second assault. The two assaults were separate and distinct events. They occurred on different dates (November 11, 2019 and November 21, 2019) and involved different individuals (Inmate Blake/Jackson and Inmate Jackson). The two events gave rise to separate claims. The Court dismissed the claim arising from the first assault at screening. (Doc. 11). This case focuses only on the second assault. (*Id.*).

5

Hackney's implicit argument that Peters's response to the first complaint rendered the grievance process for the second assault futile is unavailing. "An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). As the Seventh Circuit makes clear, it is impossible to know whether an untested remedy would be futile. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999). "The only way to find out is to try." *Id.* Hackney did not try to exhaust his remedies for the second assault.

Hackney also offered no credible testimony that fear of retaliation dissuaded him from pursuing administrative remedies. A remedy is not available to a prisoner who is "prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline." *Schultz v. Pugh*, 728 F.3d at 620 (citations omitted). The Seventh Circuit articulated the objective and subjective component of the test used to determine whether fear or intimidation made a grievance system unavailable:

> The objective standard which predominates in the case law, requires the plaintiff to show that a person of ordinary firmness would have been deterred from filing a grievance. The subjective standard requires the plaintiff to show that he was in fact deterred. Cases that embrace the subjective standard add it to the objective one rather than substituting it, with the result that the plaintiff must show both that a person of ordinary firmness would be deterred and that he himself was deterred. The additional test catches the person of more than ordinary firmness who, not having in fact been deterred, has no excuse for failing to exhaust his administrative remedies; he was not a victim of intimidation, but only of an attempt at intimidation that failed.

*Schultz*, 728 F.3d at 621. Hackney has not satisfied either component of this test. He has not shown that a person of ordinary firmness would be deterred from filing a grievance under the circumstances presented or that he had an excuse for failing to do so here. He testified that he was not subject to retaliation or threats for filing grievances at the Jail, and he did not witness other inmates face retribution for doing so.

On the contrary, Defendants explained that grievances are sealed in an envelope before a grievance officer reviews them. (Doc. 26, ¶ 22). Peters serves as the Jail Administrator and generally responds to grievance appeals. (*Id*. at ¶ 23). If an inmate complains of staff misconduct, Peters initially responds to the grievance, and the Sheriff handles the appeal. (*Id*. at ¶ 24). If the grievance addresses misconduct of Peters, the grievance is directed to the Sheriff for a response. (*Id*. at ¶ 25). In this case, Hackney's testimony that his complaints and grievance were all routed directedly to Peters is discredited by the fact that Officer Woods received and reviewed his only complaint about the first assault before Peters spoke with him about the matter. He describes no words or actions on the part of Defendants that could be interpreted as intimidation or threats used to deter his grievances. Given all of this, the Court finds no objective or subjective evidence that Defendants took steps to make the grievance process unavailable to Hackney.

Based on the discussion above, the Court concludes that Hackney failed to exhaust his available administrative remedies before bringing his claim against Defendants for failing to protect him from the assault by Inmate Jackson on November 21, 2019.

### DISPOSITION

The Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Peters, Geisen, and Middendorf (Doc. 25) is **GRANTED**. This entire action is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  3/30/2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**